**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| NATIONAL ATHLETIC SPORTSWEAR, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-354-TS |
| | ) | |
| WESTFIELD INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This insurance contract action is before the Court on Defendant's Motion for Summary Judgment (DE 14). The heart of this case, and the key to resolution of the parties' accusations of breach of contract, is the legal effect of a provision in the insurance contract requiring the insured to participate in an Examination Under Oath ("EUO") at the request of the insurance company. Also at issue is the parties' conduct throughout the claims process in the context of the Plaintiff's breach of contract claim and the Plaintiff's claim that the Defendant breached the duty of good faith.

**BACKGROUND**

On October 4, 2006, National Athletic Sportswear, Inc., the Plaintiff in this action, filed a lawsuit against Westfield Insurance Company, the Defendant in this action, in Allen County Superior Court. The Complaint has two counts. Count One is for breach of contract and accuses the Defendant of breaching its contractual obligation by not paying the Plaintiff's claimed losses, amounting to $386,299.38. Count Two is for bad faith claim settlement practices, or what Indiana law would call the breach of the duty of good faith. The allegations underlying this claim are that the Defendant: failed to acknowledge the Plaintiff's communications and act promptly

on them; failed to affirm or deny coverage of the claims in a reasonable amount of time after the

Plaintiff submitted proof of loss statements; did not attempt in good faith to effectuate prompt,

fair, and equitable settlement of the Plaintiff's claim; compelled the Plaintiff to file suit to

recover money due under the insurance policy by offering substantially less than the amount the

Plaintiff is entitled to; required an employee of the Plaintiff to submit to an EUO for eight hours

and then requested more time to continue the EUO; ignored information from its own expert

about the value of the Plaintiff's claim; and, harassed the Plaintiff's employees with numerous

requests for documents and statements under oath and then, after the Plaintiff complied, failed to

acknowledge or respond to the Plaintiff's claim in a prompt manner. This claim of bad faith

seeks punitive damages.

The Defendant removed the case to this Court on November 1, 2006, under 28 U.S.C. §

1441(a). On January 10, 2007, the Defendant filed an Answer to the Complaint (DE 12) raising

several defenses. On the same date, the Defendant filed a Counterclaim (DE 12) alleging the

Plaintiff failed to comply with terms of the contract, including the EUO provision. The

Counterclaim sought declaratory judgment that the Plaintiff's recovery under the contract was

limited or barred. On February 10, 2007, the Defendant filed a Motion for Summary Judgment

(DE 14) on the Plaintiff's two claims. The Motion has two main arguments: first, that the

Defendant was relieved of its duty to pay the Plaintiff because the Plaintiff violated the insurance

contract by not submitting to the second EUO, or the rest of the EUO; and second, that the

Defendant did not act in bad faith as a matter of law because it merely exercised its contractual

rights under the policy. The Motion did not seek summary judgment on the Defendant's

Counterclaim. The Plaintiff filed a Response on March 15, 2007 (DE 17). The Defendant filed a

Reply (DE 21) on April 2, 2007.

## JURISDICTION AND LEGAL STANDARD

The Court has subject matter jurisdiction over this diversity action under 28 U.S.C.

§ 1332(a), (c)(1).[1]

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In

other words, the record must reveal that no reasonable jury could find for the nonmoving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (quotations

and citations omitted). Rule 56(c) further requires the entry of summary judgment, after adequate

time for discovery, against a party "who fails to make a showing sufficient to establish the

---

[1] At first blush, it might appear that diversity jurisdiction is lacking in this case. 28 U.S.C. § 1332(c)(1) states that:

> a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, **except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen**, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business[.]

28 U.S.C. § 1332(c)(1) (emphasis added). The altered text can add a third type of citizenship to defendant insurers: citizenship in the state where the insured is a citizen. In this case, the Plaintiff is a citizen of Indiana, while the Defendant has its incorporation and its principal place of business citizenship in Ohio. One might construe the altered text quoted above as saying that the Defendant also has citizenship in Indiana, where the Plaintiff-insured is a citizen. This of course would defeat diversity jurisdiction and require remand to the state court.

Courts generally have declined to take that approach, which would keep many insurance cases out of the federal courts. *See* Andrew M. Campbell, *Construction and Application of 28 U.S.C.A. § 1332(c)(1), Establishing Citizenship of Insurer in Diversity Action Against Such Insurer Where Insured Is Not Joined as Party Defendant*, 119 A.L.R. Fed. 135 (1994). The Seventh Circuit has stated the provision is "a special rule for insurers in 'direct actions'–that is, cases in which a person with a claim against the insured sues the insurer directly." *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998). This is a case of the insured suing the insurer and thus is not a direct action, so the Court does have subject matter jurisdiction via diversity.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

In deciding to what insurance coverage, if any, the Plaintiff is entitled, the Court must apply Indiana law for contract interpretation. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue."). "Generally, the interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment." *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 665–66 (Ind. 2006) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997)). An insurance contract "is subject to the same rules of interpretation as are other contracts." *Id.* at 666 (citing *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537–38 (Ind.1997)). "If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning, but if the language is ambiguous, the insurance contract should be strictly construed against the insurance company." *Id.*

4

## MATERIAL FACTS

Construing all facts in a light most favorable to the Plaintiff, and drawing all legitimate inferences in favor of the Plaintiff, the following facts are assumed true for the purposes of summary judgment.

### A.      Chronology of Events

The Plaintiff, National Athletic Sportswear, Inc., ("NAS"), is an Indiana corporation with its principal place of business in Allen County. It is engaged in the business of making designs and embroidering them onto apparel for universities, colleges, stores, and manufacturers of clothing. On August 11 or 12, 2005, someone broke into the Plaintiff's premises through the rear door and stole computer equipment and other items, including a computerized embroidery designs library.

The Plaintiff had an insurance contract, effective from February 19, 2005, to February 19, 2006, with the Defendant, Westfield Insurance Company ("Westfield"), an Ohio corporation that is doing business in Indiana and has its principal place of business in Ohio. The Defendant provided $777,500 in coverage for losses to the Plaintiff's "Business Personal Property" under the contract's "Businessowners Special Property Coverage Form." The insurance also provided coverage for other areas, such as building damage and business liability. Importantly for this case, the insurance contract also contained a provision that required the insured to submit to an examination under oath ("EUO") by the Defendant regarding a claim. The provision is on page 14 under E. Property Loss Conditions, 3. Duties In The Event of Loss or Damage, b. It states:

> We may examine any insured under oath, while not in the presence of any other insured
> and at such times as may be reasonably required, about any matter relating to this

insurance or the claim, including an insured's books and records.

(DE 16-3, 3; Def. Desig. of Mat. Evid., Ex A-2, 3.) Under E.4., Legal Action Against Us, the

contract states: "No one may bring a legal action against us under this insurance unless: a. There

has been full compliance with all of the terms of this insurance[.]" (DE 16-3, 4; Def. Desig. of

Mat. Evid., Ex. A-2, 4.)

The Plaintiff reported the theft and loss of property to Defendant on a timely basis, filing

several "sworn statements in proof of loss." A statement of loss from the Plaintiff, dated

September 12, 2005, stated the Plaintiff's loss was $128,698.92. The most expensive item

submitted for loss was the "Embroidery Designs library," valued by the Plaintiff at $95,970.00

on an attachment to the statement of loss. A letter from the Defendant dated September 27, 2005,

stated that it was paying the Plaintiff $28,916.43 for business personal property. The letter stated

that the Defendant had already paid $69,500.00 for business personal property loss. The letter

also noted there was disagreement between the Plaintiff and Defendant over the value "of the

design cost," presumably a reference to the embroidery design library. The Defendant's letter

requested that the Plaintiff provide more information and documents about the library and for a

claim for loss of business income. Another of the Plaintiff's statements of proof of loss, dated

October 24, 2005, listed its loss at $223,258.90, with the figure for the embroidery design library

at $200,166.75. Plaintiff submitted another proof of loss, dated November 25, 2005, for

$332.207.37. That figure comes from the $223,258.70 submitted a month before plus

$108,948.67 for loss of income for August and September 2005. A letter from the Defendant to

the Plaintiff, dated February 17, 2006, stated that the Defendant was paying the Plaintiff $32,149

for loss of business income. The letter also noted the Defendant paid what it believed was the

proper value for the Plaintiff's business personal property claim and it was "rejecting the proof of loss submitted regarding this claim. We await any replacement cost documentation to support your replacement cost holdback claim." (DE 18-2, 25; Pl. Desig. of Evid. in Opp. to Def. Mot. for Summ. J., Ex. 6, 1).

On April 21, 2006, the Defendant, through its attorney Bruce P. Clark, conducted an EUO of Todd W. Snyder, owner and president of Plaintiff NAS. Snyder was represented by attorney Michael D. Harmeyer at the EUO. The EUO lasted about seven or eight hours that day, and its transcript runs to 361 lined pages, or 68 regular pages. The discussion covered documents already provided by the Plaintiff to the Defendant and information concerning the value of stolen items, including the embroidery design library. The last recorded comment was by Clark: "All right. I think that's enough for today. Thanks." (DE 16-12, 23; Def. Desig. Of Mat. Evid. Ex. E-4, 361:12-13.)

The Defendant did not immediately request more information or documents of the Plaintiff after the EUO. On May 3, 2006, Harmeyer, counsel for the Plaintiff, sent a letter to the Defendant's counsel, Clark, demanding an appraisal of the loss the Plaintiff was claiming. Clark responded with a letter, dated May 30, 2006, that listed documents "which were requested of Mr. Snyder during the EUO[.]" (DE 18-2, 27; Pl. Desig. of Evid. in Opp. to Def. Mot. for Summ. J., Ex. 8, 1.) Most of the requested documents related to the embroidery design library. The letter also stated that before the Defendant would engage in the appraisal process, it needed to finish the EUO and obtain the requested documents.

During the summer months of 2006, relations between the Plaintiff and the Defendant began to break down. According to Snyder, in July and August 2006, the Plaintiff provided more

than 1,000 pages of documents to the Defendant. (DE 18-2, 5; Pl. Desig. of Evid. in Opp. to Def.

Mot. for Summ. J., Snyder Aff., 5.) But a July 10, 2006, letter from Clark to Harmeyer indicated

the Defendant did not believe it was receiving the information it sought. The letter inquired

about the documents requested in Clark's May 30, 2006, letter "as well as the continuation of

Todd Snyder's Examination Under Oath (EUO)." (DE 16-8, 1; Def. Desig. Of Mat. Evid., Ex.

D., 1.) It went on to state that the EUO would be scheduled after the requested documents were

received, and that the appraisal process, requested by the Plaintiff, could not begin until the EUO

was finished.

At some point in this period, the Plaintiff retained new counsel, Mark W. Baeverstad,

who addressed the standing request for a second EUO in a letter dated August 31, 2006.

Baeverstad stated in his letter that Snyder (or the Plaintiff) had submitted 3,500 pages of

documents to the Defendant, spent eight hours undergoing the EUO, and spent eighty hours of

his time handling the Defendant's requests. The letter also stated that a revised proof of loss

statement for $516,864.38 in business property loss, along with a loss of income claim for

$130,973.78, was being submitted. The letter further stated that the Plaintiff was willing to

accept a payment of $349,176.10. This letter was the first time that the Plaintiff objected to the

second EUO, stating that there should be "a limitation on the length and subject matter of any

additional questioning." (DE 18-2, 32; Pl. Desig. of Evid. in Opp. to Def. Mot. for Summ. J., Ex.

9, 3.) The letter further stated: "[O]ne begins to question whether Westfield has acted in good

faith. If the line between good faith investigation and bad faith handling by the carrier has not

already been crossed, it is getting extremely close." (DE 18-2, 32; Pl. Desig. of Evid. in Opp. to

Def. Mot. for Summ. J., Ex. 9, 3). Clark responded by letter, dated October 4, 2006, stating that

8

the insurance contract obligated Snyder to undergo the EUO, repeating the request for documents, and rejecting any limits from the Plaintiff. The same letter also stated that the focus of the next EUO would be on new material or material not covered in the first EUO, though it reserved the possibility that other matters, including those discussed in the first EUO, might be addressed too. (DE 18-2, 34; Pl. Desig. of Evid. in Opp. To Def. Mot. for Summ. J., Ex. 10., 2.) Baeverstad, in a letter dated October 17, 2006, stated that the Plaintiff has instructed him to file suit. Even after litigation began and during the case's preliminary stage in late 2006, the parties continued to fight over the EUO.

## B.      Agreement Regarding a Planned Second EUO

Of material relevance to this case, the parties do not dispute that the mutual understanding upon ending the EUO on April 21, 2006, was that another EUO would be scheduled with Snyder after additional documents were requested and provided. Snyder testified in an affidavit: "During the course of the EUO, Mr. Clark requested additional documents from NAS. Either during or after the EUO, he stated that he would promptly send a letter to NAS following the EUO itemizing the additional documents that he would like to review." (DE 18-2, 4; Pl. Desig. of Evid. in Opp. To Def. Mot. for Summ. J., Snyder Aff., 4, ¶ 24.) Snyder also testified that: "At the conclusion of the EUO, I recall that Mr. Clark stated that he was completed with his questioning of me other than any additional questions that he may have after reviewing the additional documentation that he would be requesting." (DE 18-2, 4; Pl. Desig. of Evid. in Opp. To Def. Mot. for Summ. J., Snyder Aff., 4, ¶ 25.) Snyder also acknowledged that the Defendant's attorney, Clark, "requested that I appear for a second EUO." (DE 18-2, 4; Pl. Desig.

of Evid. in Opp. To Def. Mot. for Summ. J., Snyder Aff., 5, ¶ 30.) The Plaintiff's attorney at the

time, Harmeyer, testified in an affidavit that Clark needed to review more documents and then

would have more questions for Snyder:

> There were a number of documents and categories of documents which Mr. Clark had identified throughout the several hours which would need to still be produced which he had not yet obtained. And at the time of conclusion, he expressed a need to essentially pickup where he left off once the additional records were produced.

(DE 16-13, 4; Def. Desig. of Mat. Evid., Ex. F, Harmeyer Dep., 3:2–8.) Harmeyer further

testified that Clark "did express almost in an apologetic tone that we would need to come back

once the additional records were produced. . . . [H]e led me to the impression that he wanted to

first see the records, which would then tell him what follow-up, if any, needed to occur." (DE

16-13, 5; Def. Desig. of Mat. Evid., Ex. F, Harmeyer Dep., 4:13–21.) Additionally,  Harmeyer

testified: "The whole point of rescheduling was to explore, to examine, the new records which

would be produced forthwith." (DE 16-13, 6; Def. Desig. of Mat. Evid., Ex. F, Harmeyer Dep.,

5:13–15.) Even the August 31, 2006, letter from Baeverstad, Plaintiff's new counsel, to Clark

acknowledged and did not dispute that a second EUO was contemplated: "It is my understanding

that you have already spent eight (8) hours questioning Mr. Snyder under oath and have

intentions to reschedule his examination under oath for additional days." (DE 18-2, 32; Pl.

Desig. of Evid. in Opp. To Def. Mot. for Summ. J., Ex. 9, 3.) The record is clear that the Plaintiff

was aware of the need and plan to conduct a second EUO after it provided additional documents

to the Defendant.

Even though both parties agreed on holding a second EUO, the Plaintiff later objected to

it and refused to participate. The Plaintiff's owner, Snyder, disputed that he refused to undergo

another EUO. "Further, I have never refused to appear for a second EUO." (DE 18-2, 7; Pl.

Desig. of Evid. in Opp. to Def. Mot. for Summ. J., Snyder Aff., 7.) However, the next sentence

in his affidavit makes clear that his participation in the second EUO was indeed conditional, and

that he would not agree to the EUO unless those conditions were met: "I only request that

reasonable limitations on the scope and length of the second EUO be agreed upon by the parties

or ordered by the Court." (DE 18-2, 7; Pl. Desig. of Evid. in Opp. to Def. Mot. for Summ. J.,

Snyder Aff., 7.) Baeverstad's August 31, 2006, letter, quoted *supra*, also made clear that Snyder

would not undergo the second EUO unless the Defendant met certain conditions. Snyder stated

in his affidavit that after thirty days went by with no response to the Plaintiff's requested limits

on the EUO, "I instructed Mr. Baeverstad to initiate this litigation." (DE 18-2, 6; Pl. Desig. of

Evid. in Opp. to Def. Mot. for Summ. J., Snyder Aff., 6.)


## ANALYSIS

The crux of this case is which party, if any, is in breach of the insurance contract. The

Plaintiff in the complaint accuses the Defendant of breaching the contract by, inter alia, not

paying the Plaintiff's insurance claim for losses resulting from the break-in. The Defendant in its

counterclaim accuses the Plaintiff of materially breaching the contract by failing to comply with

terms and conditions in the policy, mainly and most importantly the EUO requirement. Each

party states that the other party's breach of contract entitles it to judgment from the Court. The

Plaintiff's claim of bad faith dealing against the Defendant is a separate but related issue and will

be examined below. This bad faith claim includes allegations of failing to acknowledge and act

promptly upon communications from the Plaintiff; failing to either affirm or deny coverage of

claims on a timely basis; "not attempting in good faith to effectuate prompt, fair[,] and equitable

settlement" of the Plaintiff's claim; "compelling" the Plaintiff to file suit to recover what it is owed under the policy; requiring Snyder to undergo the EUO for eight hours and then requesting another EUO; ignoring information from the Defendant's own expert about the Plaintiff's claim; and "harassing" the Plaintiff's employees with requests for documents and statements under oath. (Pl. Compl, 3; DE 1, 3).

**A.      Breach of Contract**

**1.      *Legal Standard***

The breach of contract issue here, a dispute over contract requirements, particularly EUOs, is similar to what occurred in the recent Indiana Supreme Court case, *Morris v. Economy Fire and Casualty Co.*, 848 N.E.2d 663 (Ind. 2006). In that case, the insureds sued the insurance company for breach of contract and failure to deal in good faith after the two sides could not agree on the claim and whether to proceed with an EUO of the insured. *Morris*, 848 N.E.2d at 665. The court made clear that the contract provision requiring the insureds to submit to an EUO was "an entirely separate condition that explicitly requires the policyholder to perform specific duties." *Id.* at 666. The court also specifically noted that the conditional requirement to submit to an EUO is not a "cooperation clause" and thus "prejudice [to the insurance company] is not a necessary consideration in determining the enforceability of other insurance policy provisions." *Id.*

The court in *Morris* found that the plaintiffs-insureds "breached the contract as a matter of law when they refused to provide an examination under oath" to the defendant insurance company. *Id.* at 666-67. The court discounted that the plaintiffs would have submitted to an EUO

12

if they had been provided copies of previous statements to the insurance company. Participating in the EUO and submitting requested documents "was a contractual obligation." *Id.* at 667. "Compliance was not optional or subject to a trial court determination of reasonableness." *Id.* The contract's reasonableness requirement, the court said, "describes how often the insurer can make requests, not the nature and extent of the information or statement sought." *Id.* The court declined to delve into whether other actions of the insurance company were unreasonable in light of the plaintiffs-insureds' refusal to submit to even one EUO. *Id.*

The Seventh Circuit, in *Employers Mutual Casualty Co. v. Skoutaris*, 453 F.3d 915 (7th Cir. 2005), applied this rule in a case similar to *Morris* and the current action. "In the context of a breach of an EUO clause, therefore, the Supreme Court of Indiana has established that an insurance company need only show a material breach to prevail." *Skoutaris*, 453 F.3d at 924. In *Skoutaris*, the insured refused to submit to an EUO regarding the claim he filed for his restaurant, which had been destroyed by fire. *Id.* "The contract does not allow Skoutaris to ignore his express duties because he felt that he had done enough. . . . Skoutaris's intransigence constituted a willful and intentional breach of the EUO clause," and the district court's ruling for the insurance company's summary judgment motion was correct. *Id.* at 925.

The Indiana Court of Appeals applied the *Morris* approach in *Knowledge A–Z, Inc. v. Sentry Insurance*, 857 N.E.2d 411 (Ind. Ct. App. 2006), a case factually similar to *Morris*, *Skoutaris*, and this case. After the insured filed a claim for stolen property, the insured's owner did not make himself available for an EUO and thus breached the contract, making summary judgment for the defendant insurance company appropriate. *Id.* at 422. It did not matter that the insured would have stipulated that his previous interview was under oath. *Id.*

13

2.    ***Application to "Reasonableness" Claims***

The present action also boils down to a dispute over compliance, or lack thereof, with the EUO clause in the insurance contract. The contract clearly states that the insured must submit to an EUO if requested by the insurance company. The parties conducted one day-long EUO. Both parties left that EUO with the expectation that another EUO would resume once the Defendant requested, and the Plaintiff provided, additional documents relating to the Plaintiff's claims. The Plaintiff later objected to the second EUO and refused to participate because he became frustrated and concerned the Defendant was harassing him. The Plaintiff claimed then, and argues now, that a condition of its participation in a second EUO is that it be reasonable.

As a general matter, it should also be noted that *Morris* and *Skoutaris* make clear that the insureds cannot put conditions on their existing contractual duties. The court in *Morris* stated that the insureds' demand that they receive copies of the previous statements before submitting to an EUO was unfounded. "[T]he contract does not provide that an insured can impose this prerequisite upon the insurer before complying with agreed duties." *Morris*, 848 N.E.2d at 666, *quoted in Skoutaris*, 453 F.3d at 925. This casts doubt on the legal basis for the Plaintiff's owner, Snyder, to condition his participation in the second EUO upon an explanation of the scope, subject matter, or length of that EUO or that the EUO be reasonable.

More specifically in regard to this case, demanding that an EUO have "reasonable limitations" lacks legal support. The Indiana Supreme Court rejected such an argument in *Morris*, where the insurance contract at issue had similar language to the contract here. The quoted phrase in that case was "[A]s often as we reasonably required." *Id.* at 667 (alteration in original). "This reference . . . describes how often the insurer can make requests, not the nature

14

and extend of the information or statement sought." *Id.* The court also noted that the insureds "do not contend that the frequence of [the insurance company's] requests were unreasonable." *Id.*

The operative language of the contract in this case is: "We may examine any insured under oath . . . as may be reasonably required." (DE 16-3, 3; Def. Desig. of Mat. Evid., Ex A-2, 3.). The Plaintiff argues that such language means that "[a]ny request for additional [EUOs] must be reasonable." (DE 17, 2; Pl. Memo. of Law in Opp. to Summ. J, 2.) The Plaintiff's arguments for "reasonableness" in reference to the EUO refer to both the subject matter or scope of the EUOs as well as the frequency or number of EUOs: "No rehashing of the same topics discussed in the seven-hour EUO ought to be conducted and some agreement on the length of the sworn statement should be reached." (DE 17, 7; Pl. Memo. of Law in Opp. to Sum. J. at 7.) Because the Plaintiff here did undergo one EUO – unlike in *Morris*, *Skoutaris*, and *Knowledge A–Z* where the insureds never submitted to any EUO – the issue of the frequency or length of the EUO must be addressed. However, as explained below, the fact that the Plaintiff submitted to one EUO, or the start of the EUO, before refusing to participate in the second, or in the continuation of the EUO, is a distinction without a legal difference. The Plaintiff at some points in its legal argument combines the issues of reasonable scope or subject matter on the one hand, and reasonable time, length, or frequency on the other hand, and at other points the Plaintiff treats them separately. The Court will address each reasonableness objection in turn.

*(a) Reasonableness as to Scope or Subject Matter of the EUO*

The Plaintiff argues that there is a reasonableness limit on the subject matter or scope of a second EUO. The Plaintiff's position is that:

15

> a reasonableness limitation be placed on any further questioning of Mr. Snyder. Mr.
> Clark ought not to be allowed to rehash the same subject matter that was thoroughly
> covered in the first EUO. The subject matter ought to be limited to the new documents
> that were produced by NAS after the initial EUO.

(DE 17, 7; Pl. Memo. of Law in Opp. to Sum. J. at 11.) This argument amounts to a claim that

the contract has a reasonableness requirement on *what kind of* matters the insurance company

may ask about. However, the contract provision at issue states that the examination may be taken

"about *any* matter relating to this insurance or the claim." (DE 16-3, 3; Def. Desig. of Mat. Evid.,

Ex A-2, 3) (emphasis added). Of course, if the Defendant began inquiring into issues completely

unrelated to the insurance or the claim, that would be a different matter. But no such allegation is

made here.

In *Morris*, the Indiana Supreme Court said the similar contract provision:

> describes how often the insurer can make requests, not the nature and extent of the
> information or statement sought. The policy contract does not itself impose an explicit
> general "reasonableness" requirement on the insurer regarding *what* documentation the
> insurer might demand of the insured or in *what* context the insurer might ask for an
> examination under oath.

*Morris*, 848 N.E.2d at 667. The word "reasonably" in the contract here, like "reasonablesness" in

the contract in *Morris*, refers to how often the insurer may require the insured to undergo an

EUO, not the subject matter or topic of an EUO.

The Plaintiff's legal authority for a claim that the EUO's subject matter or scope be

reasonable or limited is confined to three district court cases cited in its Memorandum of Law in

Opposition to Summary Judgment: *Kamin v. Central States Fire Ins. Co.*, 22 F.R.D. 220

(E.D.N.Y. 1958); *Joe's Market Fish, Inc. v. Scottsdale Ins. Co.*, No. 97-C-2313, 1998 WL

851504, 1998 U.S. Dist. LEXIS 19140 (N.D. Ill. Dec. 3, 1998); and, *Jones v. State Farm & Cas.

Co.*, 129 F.R.D. 170 (N.D. Ind. 1990). These cases are of little help to the Plaintiff. First, they all

concern discovery disputes, which are governed by the Rules of Civil Procedure. As has been pointed out, the dispute in this case, over EUOs, is a contractual matter. *See Morris*, 848 N.E.2d at 667 (rejecting the applicability of discovery rules). Second, the first two cases stand for the proposition that a previous EUO of a person does not preclude a party from deposing that person later. That holding supports the Defendant's position if it is of any applicability at all.

　　*Jones* has more conceivable applicability, and the Plaintiff puts stock in the holding. That case involved the plaintiff-insured's motion to quash the deposition the defendant-insurer sought to conduct on the grounds that the insured had already given a recorded statement and an EUO about his claim. *Jones*, 129 F.R.D. 170, 170. The magistrate allowed the deposition to go forward but limited its scope or subject matter: "[T]here is no logical reason why that deposition should duplicate the material covered by the examination under oath or the statement taken by the claims adjustor. Therefore, the deposition must be limited to those areas not covered in the previous two statements." *Id.* at 171. The Plaintiff adopts this view as its stance in this case, but this holding, like the other two cases, is inapplicable. The parties in this action are not fighting over discovery and depositions; they are debating the legal obligations and significance of the EUO provision in the insurance contract during the pre-litigation period of this case. That makes it an entirely separate issue governed by different legal authority, namely, Indiana contract law as spelled out in the *Morris* case. Also, as previously mentioned, the Plaintiff has not pointed to information that indicates the Defendant planned or intended to inquire into the same information and documents that were discussed in the first EUO. Last, *Jones* and the other cases have no binding authority on this Court; they are only persuasive authority. Therefore, the Plaintiff's citation to these cases is unavailing for its position.

Even if it were true under the legal authority governing this case that a reasonableness principle applies to the subject matter, topic, or scope of the EUO, there are no material facts to support a claim a second EUO would be unreasonable in this context. There is no factual indication that the Defendant's purpose in holding the second EUO was meant to harass the Plaintiff. In fact, the record indicates that the Defendant's purpose in conducting a second EUO was to inquire into documents that were either requested of and received from the Plaintiff after the first EUO or not discussed during the first EUO. The record also is clear that this was the understanding of both Plaintiff and Defendant at the end of the first EUO. The Defendant indicated in Clark's October 4, 2006, letter that its focus would be on new material or material not covered in the first EUO, though it reserved the possibility that other matters, including those discussed in the first EUO, might be addressed too. The mere possibility that matters discussed in the first EUO might be addressed again in a second EUO cannot create a basis for claiming the second EUO is presumptively unreasonable. The Plaintiff's evidence does not include any allegation that the Defendant during the second EUO intended or planned to cover the same information as the first EUO, only that the Plaintiff feared this. The Plaintiff's belief that the EUO was meant to harass, a belief not articulated until August 2006, does not create a triable issue of fact for a jury to determine. The Plaintiff only accuses the Defendant of refusing to set reasonableness limits on the scope or subject matter. While it might be courteous of the Defendant to do so, it was not required by contract or law, as enunciated in *Morris* and applied in *Skoutaris* and *Knowledge A-Z*. In sum, the Court cannot agree with the Plaintiff's argument that in this case the scope or subject matter of the EUO must be "reasonable," as set by a court or agreed upon by the parties.

*(b) Reasonableness as to Time, Length, or Frequency of the EUO*

The Plaintiff also argues that the insurance "policy contains a limitation as to how often Westfield may require Mr. Snyder to sit for" EUOs. (DE 17, 2; Pl. Memo. of Law in Opp. to Summ. J. 2) (emphasis removed).  This is a different argument than what the courts addressed in *Morris*, *Skoutaris*, or *Knowledge A–Z*. The contract in this case states that insureds must undergo an EUO "at such times as may be reasonably required." (DE 16-3, 3; Def. Desig. of Mat. Evid., Ex A-2, Contract, 3.) As noted earlier, this means the number or frequency of EUOs must be reasonable. *See Morris*, 848 N.E.2d at 667 ("[R]easonableness . . . describes how often the insurer can make requests.).

The Plaintiff in this case, however, does not state exactly what that reasonableness limit is or how often the Defendant may require an EUO other than claiming that "Mr. Snyder should not be required to sit for a second EUO unless some reasonable understanding can be reached with Westfield as to the length and scope of the second EUO/deposition." (DE 17, 2–3;  Pl. Memo. of Law in Opp. to Summ. J. 2–3.) But this mixes the prior argument regarding the scope or subject matter of the EUO with the issue of a reasonable frequency or number of EUOs. Because the Plaintiff made the argument about the frequency or length of the EUO after undergoing a seven or eight hour EUO, the Court will construe the Plaintiff's argument to be that, at least here, more than one EUO of seven or eight hours is unreasonable. This is based on, in particular, the Plaintiff's statement that after providing thousands of pages of documents, spending many hours handling information requests, and consenting to Defendant's "eight (8) hours questioning Mr. Snyder under oath," the Plaintiff "will not agree to your proposal to further question Mr. Snyder under oath." (DE 18-2, 32; Pl. Desig. of Evid. in Opp. to Def. Mot.

19

for Summ. J., Ex. 9, 3).

As authority for the claim that it is unreasonable to hold an EUO after seven or eight hours, Plaintiff cites the Federal Rules of Civil Procedure. Plaintiff also rests its argument on references to Defendant's many requests for documents, suggesting that the cumulative amount of information sought from the Plaintiff became unreasonable.

Plaintiff's reliance on the Federal Rules of Civil Procedure comes from its incorporation and quotation of Baeverstad's August 31, 2006, letter to Clark. That letter states that "the Federal Rules of Civil Procedure limit depositions to seven (7) hours." (DE 18-2, 32; Pl. Desig. of Evid. in Opp. to Def. Mot. for Summ. J., Ex. 9, 3) (quoted in DE 17, 4; Pl. Memo. of Law in Opp. to Summ. J., 4.) Plaintiff presumably is referring to Fed. R. Civ. P. 30(d)(2), which states:

> Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.

Fed. R. Civ. P. 30(d)(2). First and most importantly, the Federal Rules of Civil Procedure are not authoritative or dispositive regarding the contractual obligations at issue here. No party has cited any portion of the contract incorporating the Rules as the guidelines for interpretation or disputes, including how often EUOs "may be reasonably required." (DE 16-3, 3; Def. Desig. of Mat. Evid., Ex A-2, Contract, 3.) The Federal Rules in this context are at best only persuasive or analogous. *See Morris*, 848 N.E.2d at 667 (submitting to an EUO "was a contractual obligation, not a discovery request. . . . Compliance was not optional or subject to a trial court determination of reasonableness."). Second, Rule 30(d)(2) itself does not cap depositions categorically at seven hours. Instead, it states that the court may authorize more time "for a fair examination." Fed. R. Civ. P. 30(d)(2). Hence, even if the rule was authoritative, its wording alone would not support a

claim that it is always unreasonable to conduct an EUO after the first EUO was eight hours.

Plaintiff also couches its claim in the context of Defendant's many requests for documents and information. The implication is that after the Plaintiff provided thousands of pages of documents, spent many hours dealing with Defendant's document requests, and submitted to the first EUO, it was unreasonable to make Plaintiff submit to another EUO. While it is clear that the Plaintiff provided a great amount of cooperation with the Defendant's requests, one problem with this argument is that the Plaintiff left the first EUO with the understanding that the Defendant would request, and the Plaintiff would provide, more documents, and that another EUO would be held to discuss them. The second EUO was not a surprise or an unreasonable ambush. But the Plaintiff's argument creates the impression that the request for the second EUO was unexpected. However, the testimony of the Plaintiff's owner indicates that he grew frustrated with the pace of the claim process and then objected to the second EUO. As noted before, The Defendant's failure to respond as the Plaintiff desired or to specifically delineate the focus of the second EUO might have been courteous and productive, but for better or worse, the law does not require those qualities, at least in this context.

A reasonable jury could not find that holding a second EUO, or continuing the first EUO, is unreasonable in this case. In other words, requiring the EUO in this case, in light of all the circumstances and events, was reasonable as a matter of law. Much more would be needed in this case to make this a triable issue of fact. Perhaps if repeated EUOs were conducted many times, it could become clear that the frequency of EUOs was becoming unreasonable and was meant to harass, as the Plaintiff had suggested in this case. This ruling does not lead to the "logical conclusion" that the Defendant "could take an infinite number of [EUOs] lasting days,

weeks or months on end without any limitation." (DE 18-2, 26; Pl. Desig. of Evid. in Opp. to

Def. Mot. for Summ. J., Ex. 11, 1) (quoted in DE 17, 5; Pl. Memo. of Law in Opp. to Summ. J.

5.) It is also  possible that the second EUO could have become unreasonable, but it never

occurred. The first EUO – and the prospect of having to sit through a second EUO – may have

been trying for the Plaintiff and not particularly enjoyable, but that does not amount to

unreasonableness. No material facts are presented for such a showing of unreasonableness or

harassment here. Insofar as the Plaintiff claims that it is unreasonable and in violation of the

contract policy to hold a second EUO after the first one was seven or eight hours, or that it is

unreasonable to continue an EUO for more than eight hours on another date, the Plaintiff's claim

fails.

In conclusion, it was not unreasonable as a matter of law – in terms of either scope or

subject matter on the one hand, or length, frequency, or time on the other hand – to require a

second or continued EUO of the Plaintiff. Because the Plaintiff refused to submit to the

requested EUO as required by the contract, this Court has no choice but to find that the Plaintiff

breached that provision and thus the contract. *Morris*, 848 N.E.2d at 667.

**B.     Bad Faith**

The Plaintiff's other claim against the Defendant is for bad faith in handling Plaintiff's

insurance claim. The Plaintiff lists seven categories of allegations: failing to acknowledge and

act promptly upon communications from the Plaintiff; failing to either affirm or deny coverage

of claims on a timely basis; "not attempting in good faith to effectuate prompt, fair[,] and

22

equitable settlement" of the Plaintiff's claim; "compelling" the Plaintiff to file suit to recover what it is owed under the policy; requiring Snyder to undergo the EUO for eight hours and then requesting another EUO; ignoring information from the Defendant's own expert about the Plaintiff's claim; and "harassing" Plaintiff's employees with requests for documents and statements under oath. (Pl. Compl, 3; DE 1).

The Plaintiff also argues that the Defendant's conduct is "unfounded" and that this raises an issue of fact for a jury to consider regarding whether: the Defendant's refusal to pay the claim is unfounded; the delay in payment is unfounded; and, the Defendant has exercised unfounded advantage to pressure the Plaintiff into settlement. The Plaintiff also argues that the Defendant has misrepresented the EUO provision, conduct suggesting it has acted in bad faith.

1.      *Legal Standard*

Insurers have a duty to deal with the insured in good faith, and a violation of that duty is a tort giving rise to a cause of action. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1999). This duty "includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* This cause of action "does not arise every time an insurance claim is erroneously denied. For example, a good faith dispute about the amount of a valid claim or whether the insured has a valid claim at all will not supply the grounds for a recovery in tort." *Id.* at 520.

One way "to prove bad faith . . . [is to] establish that the insurer had knowledge that there was no legitimate basis for denying liability," *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829

N.E.2d 968, 976 (Ind. 2005) (internal quotation marks omitted) (quoting *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002)), or if there is "no rational, principled basis for doing so." *Erie*, 622 N.E.2d at 520. "As a general proposition, [a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Magwerks*, 829 N.E.2d at 977 (internal quotations omitted) (alternation in original). In *Freidline*, the Indiana Supreme Court ruled that the insurance company had breached its contract by failing to defend its insured from a lawsuit, but it had not committed the tort of bad faith because there was "a rational basis" for the insurance company's actions and it used a "good faith legal argument." *Freidline*, 774 N.E.2d at 40, 42. In *Magwerks*, the Indiana Supreme Court affirmed a jury finding of bad faith that was based on evidence that the insurance company had known or acknowledged the insured's roof had collapsed, an event that was explicitly covered by the insurance policy, but nevertheless denied the insured's claim. *Magwerks*, 829 N.E.2d at 971, 975–77.

The Seventh Circuit in *Skoutaris* applied Indiana law to the plaintiff's bad faith claim and found that the insurance company had not breached its duty of good faith because it evaluated the claim based on the information it had and it sought more information through the EUO. *Skoutaris*, 453 F.3d at 925–26. The court characterized the insurance company's repeated offers to conduct an EUO of the insured as "almost a year of good faith attempts" that were rebuffed by the insured. *Id.* at 926.

**2.**     *Application*

The Defendant on numerous occasions requested that the Plaintiff, through its owner,

Snyder, undergo a second EUO. The second EUO was not a surprise, but rather was in accord with the understanding of both parties at the completion of the first EUO because of the need to get more information. The Plaintiff at first turned over requested information and did not immediately object to the second EUO when the Defendant raised the issue. It was not until August 2006 that the Plaintiff changed its mind about conducting the EUO. The Defendant repeatedly warned the Plaintiff of its obligation to comply with the EUO provision in the contract, but the Plaintiff refused to participate in the EUO unless there was an agreement about "reasonableness." The sequence was similar to what happened in *Skoutaris*, where the court found that the insurer did not breach the duty of good faith: "Over several months, Hamilton Mutual continually asked for documents necessary for an EUO, as well as the EUO itself, and warned of the likely consequences of Skoutaris' litigation strategy." *Skoutaris*, 453 F.3d at 926. There is nothing about the sequence of events in this case that gives rise to an indication of harassment, dishonest purpose, ill will, unfounded delay, or bad faith. The Defendant simply insisted on proceeding according to plan, that is, to hold another EUO.

Also, the Defendant did not deny all liability and refuse outright to make any payments. Rather, it made several payments to the Plaintiff based on the Plaintiff's claims under the insurance policy. The dispute centered on the value of the embroidery design library and the loss of business income, the issues that the Defendant was seeking more information about. The Defendant's questions about the value of the design library and requests for information about that and other matters before making more payments had a rational, factual basis and cannot be said to be in bad faith. *See Erie Ins. Co. v Hickman*, 622 N.E.2d 515, 520 (Ind. 1999). The Defendant's disagreement with the Plaintiff concerning the value of the claims, payment of the

25

claims, and the duties arising under the EUO provision cannot constitute bad faith dealings. "That insurance companies may, in good faith, dispute claims has long been the rule in Indiana." *Erie*, 622 N.E.2d at 520. If an insurance company can breach its contract yet still not commit bad faith, *Freidline*, *supra*, it is all but impossible for an insurance company to commit bad faith when it is the insured, the Plaintiff here, that has breached the contract via the EUO provision.

Other factual allegations supporting the bad faith unfounded delay claim that the Court must address are the allegations that the Defendant did not return the Plaintiff's phone calls and ignored the Plaintiff's letters and e-mails, and that the Defendant delayed response for several months after the Plaintiff submitted documents. Assuming these are true for purposes of summary judgment, this conduct by the Defendant does not rise to the level of bad faith. Being slow or unresponsive is not the equivalent of "dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005); *see also Erie*, 622 N.E.2d at 520 ("[T]he lack of diligent investigation alone is not sufficient to support an award [for bad faith]."). Again, the fact that the Defendant paid the Plaintiff for some claims, or part of some claims, belies the allegation that the Defendant's behavior was a "furtive design" to lead to an unfounded delay in payment. *Magwerks*, 829 N.E.2d at 977.

The Plaintiff has raised no triable issue of fact for a jury to decide if the Defendant's conduct in handling the claim, conducting an EUO, and requesting information and another EUO was in bad faith. Accordingly, the Defendant's motion for summary judgment on the claim of bad faith is granted.

**CONCLUSION**

26

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment (DE 14). The matter is set for a telephone conference on November 13, 2007, at 12 PM regarding the disposition of the Defendant's pending counterclaim.

SO ORDERED on November 5, 2007

    s/ Theresa L. Springmann     
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT